**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **MARTIN LEVI GHERE,** | ) | Case No. 06-43542-DRD |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **ROSEN'S, INC.,** | ) | |
| Plaintiff, | ) | Adversary No. 07-4168-DRD |
| | ) | |
| v. | ) | |
| | ) | |
| **MARTIN LEVI GHERE,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The matter is before the Court on the Complaint Objecting to Discharge ("Complaint") filed by Rosen's, Inc. ("Rosen's") against Martin Levi Ghere ("Debtor"). In the Complaint, Rosen's asserts that Debtor produced materially false financial statements with the intent to deceive Rosen's into extending credit, that Debtor failed to offer a credible explanation for the loss/dissipation of assets and that Debtor failed to keep and maintain reasonable business records. Rosen's argues that Debtor should be denied a discharge with respect to the amount owed to Rosen's pursuant to 11 U.S.C. § 523(a)(2) and denied a discharge pursuant to §§727(a)(3) and/or 727(a)(5). A trial was held on April 9, 2008 and the Court took the matter under advisement. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J). This Memorandum Opinion contains my Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable to this matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For all the reasons set forth below, the Court finds

Debtor's debt to Rosen's non-dischargeable pursuant to §523(a)(2) and that Rosen's should be denied a discharge pursuant to §727(a)(3). The Court specifically makes no findings regarding Rosen's §727(a)(5) claim as that claim is moot.

## I.  FACTUAL BACKGROUND

Debtor is a farmer. He also ran a cattle operation and he resold agricultural chemicals, which is the product that he purchased from Rosen's. The business relationship between Debtor and Rosen's was initiated by a credit application submitted by Debtor on or about February 15, 2003.[1] The application was submitted under the name "Great Western Ag" and in response to the type of legal entity the applicant was, Debtor marked the corporation box. Debtor signed the application in his personal name with the title of "owner."[2] Great Western Ag is actually a LLC. With the credit application, Debtor also submitted a financial statement dated December 31, 2002, which showed total equity of $768,555 and that his net income in 2002 was $160,389.[3] The application was processed according to Rosen's standard procedures and Rosen's approved the application and first extended credit to Debtor on or about April 13, 2003.[4] Debtor submitted a second financial statement dated March 11, 2003 and a third one dated April 22, 2004, each depicting a positive overall financial condition. Rosen's agreed to two credit limit increases based, atleast in part, on its review of the information, which it assumed to be correct, contained in the financial statements provided.

---

[1] Rosen's Exhibit #2.

[2] Id.

[3] Rosen's Exhibit #12.

[4] Rosen's Exhibit #2, see the handwritten note on page 2 of this exhibit.

Debtor used a software program, which he only partially understood how to operate, to generate the financial statements that he provided Rosen's. A vast majority, if not all, of the assets listed on the statements were actually leased items, which were not in fact owned by Debtor. He failed to list as a liability, Community First Bank, an entity to which he owed over a million dollars and which had a blanket lien on all of his assets. Cancelled bank checks, tax returns, and profit and loss and financial statements, generated by Debtor, constitute Debtor's business records, none of which provide an accurate or discernable history of his business transactions. Debtor maintained little, if any, differentiation between the assets and liabilities of each of his business ventures, which became apparent when Community First Bank foreclosed its lien on all of his assets.

Debtor filed a Chapter 7 petition under the Bankruptcy Code on December 21, 2007. Rosen's filed a proof of claim for an unsecured debt due and owing in the amount of $420,372.31. On November 21, 2007, Rosen's filed its Complaint objecting to discharge of this debt under § 523(a)(2) alleging that Debtor induced Rosen's to extend credit through the use of false financial statements upon which Rosen's reasonably relied. Rosen's also argues that Debtor should be denied a discharge pursuant to §§ 727(a)(3) and/or (a)(5) because he failed to explain the loss or dissipation of assets and failed to keep or preserve adequate business records.

## II. DISCUSSION AND ANALYSIS

A.    **11 U.S.C. § 523(a)(2)(B)**: **False Financial Statements**

Section 523(a)(2)(B) provides:

> (a) A discharge under 727. . . of this title does not discharge an individual debtor
>
> from any debt-

3

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(B) use of a statement in writing–

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor ... reasonably relied; and

(iv) that the debtor caused to be made published with intent to deceive.

Rosen's, as the objecting creditor, has the burden of proving every element of § 523(a)(2)(B).  *See Valley Nat'l Bank v. Bush (In re Bush)*, 696 F.2d 640, 644 (8th Cir.1983); *see also Dakota Bank and Trust Co. of Fargo v. Storey (In re Storey),* 1986 WL 713499 (D. N. D.).  This burden must be met by a preponderance of the evidence.  *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 698 (8th Cir.1997), *citing Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct 654, 659-60, 112 L.Ed.2d 755 (1991); *Bush*, 696 F.2d at 644.  Evidence in support of a § 523(a)(2) cause of action must be viewed consistent with the congressional intent that exception to discharge be narrowly construed against the creditor and liberally construed against the debtor, thus effectuating the "fresh start" policy of the Code.  *Dakota Bank*, 1987 WL at *5 *citing In re Hunter*, 36 B.R. 28, 31 (Bankr. D. N.D.1983), *rev'd on other grounds*, 771 F.2d 1126 (1985); *see also Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 879-80 (5th Cir.1982).  The evidence clearly establishes that the first two elements of Rosen's § 523(a)(2)(B) claim have been satisfied, i.e. that Debtor provided a writing that was materially

false[5], regarding his financial condition. The issues before the Court are whether the evidence supports a finding that Debtor intended to deceive Rosen's with the financial statements he provided and whether Rosen's reliance on those statements was reasonable.

Debtor denies that he had the requisite intent to deceive Rosen's. In support of his denial, Debtor asserts that he is an unsophisticated farmer, not keen in the area of business. He argued that because he relied on a canned software program to create his financial statements, that he could not have known that the information he provided was false, and therefore, he could not have intended to deceive Rosen's.

Direct evidence of intent rarely exists and courts may look to surrounding circumstances to ascertain intent. *Q.C. Financial Services, Inc. v. Beza (In re Beza)*, 310 B.R. 432, 436 (Bankr. W.D. Mo.2004), *citing Meramac Valley Bank. v. Newell (In re Newell),* 164 B.R. 992, 995-96 (Bankr. E.D. Mo.1994); *Kline's Service Center, Inc. v. Fitzgerald (In re Fitzgerald)*, 109 B.R.

---

[5] Although not directly, in his post-trial brief, Debtor raises the question of whether the financial statement was "materially" false as that term is used in § 523(a)(2). Essentially Debtor's argument is that because Rosen's did not rely on the financial statements when making the determination to grant and extend credit and because integrity is Rosen's priority when making credit decisions, that the information contained in the financial statements was not "material" for purposes of § 523(a)(2). The problem with this argument is that is misstates the facts in evidence. Mr. Schaeffer did testify that integrity is an important quality that he looks for in his customer's, but that it was his regular business practice to rely on financial statements when making credit decisions. True, Mr. Schaeffer could not specifically recall whether he reviewed the March 11, 2003 financial statement when deciding whether to increase Debtor's credit. However, he did testify that he reviewed Debtor's financial statement dated December 31, 2002 when making the initial decision to grant credit and that he reviewed Debtor's financial statement dated April 22, 2004 when deciding to increase Debtor's credit to $350,000. Furthermore, Mr. Schaeffer specifically testified that had he known Debtor's true financial situation, he would not have extended him credit. Based on this, the Court concludes that the information contained in the financial statements was "material" in that it was the type which affected Rosen's decision to grant and increase credit, it was admittedly false and there is no question that Rosen's did rely on it when making its credit decisions.

893, 897 (Bankr. N.D. Ind.1989). An intent to deceive does not mean that a debtor acted with a "malignant heart." *In re Bohr*, 271 B.R. 162, 169 (Bankr. W.D. Mo.2001), *citing Agribank v. Webb (In re Webb)*, 256 B.R. 292, 297 (Bankr. E.D. Ark.2000). Knowledge of the falsity of the information or reckless disregard for the truth satisfies the intent element of § 523(a)(2)(B). *Id.* A debtor's mere unsupported assertions of honest intent will not overcome natural inferences derived from admitted facts. *Webb*, 256 B.R. at 297.

The Court finds that Debtor acted with a reckless disregard for the truth each time he submitted a financial statement. The statements were rife with misinformation regarding his assets and liabilities. He admitted that he only partially understood how to operate the software program that he chose to utilize for his businesses. He admitted that he did not update his financial information in the software program "very often," and that he did not do anything to verify the veracity of the numbers generated by the program. He admitted that he failed to disclose to Rosen's that he owed over a million dollars to Community First Bank, and that the bank had a blanket lien on all of his assets. He failed to show that a majority, if not all, of his listed assets were actually leased property. Debtor did argue that some of the listed assets were subject to a capital lease, suggesting that those assets actually were his property as he would own them at the conclusion of the lease term. However, even if this were true, Debtor would then have needed to list the corresponding debt in the liabilities section of his financial statement, and since he did not, accepting his argument simply bolsters the Court's finding that Debtor understated his liabilities. His blanket testimony, that he did not intend to deceive Rosen's and that he did not know the information that he provided on his financial statements was inaccurate because he is not sophisticated, is simply not credible. At the very least, even if the Court were

to accept Debtor's assertions of unsophistication, the Court finds Debtor's actions regarding the information he provided in his financials to be reckless. When he submitted the statements, he admitted that it was his intent and desire that Rosen's would rely on the information he provided in their analysis of whether to extend credit to him. The fact that he did absolutely nothing, other than push "print" on his computer, to verify the truth about the financial picture depicted in those financial statements is sufficient for this Court to infer an intent to deceive Rosen's based on his reckless behavior. Mr. Schaeffer's impression that Debtor is a man of integrity, and his belief that Debtor did not intentionally provide false financial statements, are no more relevant then Debtor's protestations of lack of fraudulent intent and are not dispositive in light of the Court's finding that Debtor's actions were reckless, a finding sufficient to support an exception to discharge.

Debtor's argument regarding his failure to list his million plus dollar debt to Community First Bank is disingenuous. On the one hand he urges the Court to accept that he is unsophisticated in the matters of business and that he did not observe the legal distinctness of the different business entities because he did not know that he needed to. He admitted that he mixed "apples and oranges," i.e. that he completely failed to segregate the assets of Great Western Ag, LLC with his own or other business entities' assets and that he essentially treated them all as sole proprietorships. He described in detail that it was his business practice to transfer money from one business account to another. He testified that he did not know his failure to observe the legal formalities of a LLC was not an acceptable business practice. However, on the other hand, he argues that the reason he did not list Community First Bank as a being owed over a million dollars and that it had a blanket lien on all of his assets, was because he was only applying for

credit for the LLC, not his farming operation, which was the business for which he obtained such a substantial debt. The evidence suggests that Debtor either had a sudden revelation regarding corporate distinctness when he was applying for credit from Rosen's, an explanation which would only shed light on the omission of an enormous liability in the financial statements, but not the many other misstatements, or he simply chose to acknowledge the distinction only when it served his purpose. Either way, the Court finds Debtor's omission a reckless disregard for the truth and, therefore, evidence of an intent to deceive.

The determination of the reasonableness of a creditor's reliance is to be made in light of the totality of the circumstances. *Pontow*, 111 F.3d at 610, *citing Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir.1993). The Eighth Circuit has set forth factors that courts may consider in their analysis of whether a lender's reliance on financial documents was reasonable. First, a court may consider whether there are any "red flags" which would have alerted an ordinarily prudent lender to the possibility that the representations presented were not accurate. *Pontow*, 111 F.3d at 610. Second, a court may consider whether a minimal investigation would have revealed any inaccuracies. *Id.* However, a lender is not required to engage in an independent investigation of a potential borrower's financial statement. *Id.* "To require the lender to verify the accuracy of statements in a financial statement provided in connection with a loan application places on the lender the unfair burden of presuming that every borrower who provides a financial statement is dishonest." *Id.*

Debtor argues that Rosen's did not rely on the financial statements when it agreed to grant/increase credit to Debtor and that, if it had, it would have been unreasonable reliance based on the "red flags" contained in the credit application and statements. The Court disagrees.

Rosen's credit manager, Joseph Schaeffer, testified that he relied on Debtor's financial statement dated December 31, 2002 when he initially approved the loan. He testified that he relied on the financial statement dated April 22, 2004 when he approved a credit increase to $350,000. This testimony is corroborated by his hand-written notes on the second page of Debtor's credit application which specifically refer to information contained in the financial statements. Mr. Schaeffer testified that it was Rosen's normal business practice to rely on the financial information provided by its customers and that Rosen's receives hundreds of financial statements just like Debtor's. He testified that it is their business practice to assume the information provided is accurate. Substantial evidence supports the Court's finding that Rosen's relied on the financial statements provided by Debtor.

Debtor also contends that any reliance by Rosen's would be unreasonable because there were "red flags" which should have alerted Rosen's to the possibility that the statements were inaccurate. Debtor argues that Rosen's failure to identify the fact that the financial statements do not reflect depreciation for the equipment supports his theory of unreasonable reliance because Rosen's should have seen this inconsistency as a "red flag" and inquired about it before extending credit. The Court disagrees. First, the Court notes that Rosen's could not have even noticed a discrepancy in the statements until deciding to increase Debtor's credit as only the March 11, 2003 and the April 22, 2004 financial statements could have conceivably reflected any depreciation. More importantly, however, the Court finds this issue totally unrelated to the relevant issue which is that the financial statements completely overstated Debtor's assets and understated his liabilities in such a way that Rosen's was misled with regard to Debtor's financial picture. Rosen's failure to notice a lack of depreciation, especially when Mr. Schaeffer

9

testified that he thought such information would be contained in another business document, is of little significance.  Mr. Schaeffer did testify, however, that had he known that most of the assets identified in Debtor's December 31, 2002 financial statement were actually subject to a lease, that he probably would not have extended credit at all, as that would have negatively impacted Debtor's net worth.  Similarly, he testified that had he known that Debtor owed Community First Bank over a million dollars and that it had a lien on all of Debtor's assets, that he would not have extended credit.  "Reasonable reliance can also be demonstrated by showing that credit would not have been extended had accurate information been provided."  *Norbank v. Kroh (In re Kroh)*, 87 B.R. 1004, 1008 (Bankr. W.D. Mo.1988), *citing In re Coughlin*, 27 B.R. 632, 636 (Bankr. Mass.1982).  The Court is convinced that Rosen's relied on the financial statements provided by Debtor, and that had the correct information been provided, Debtor would not have been extended credit from Rosen's.

Another "red flag" identified by Debtor is the inconsistency on the credit application whereby Debtor listed Great Western Ag as the applicant, marked the "corporation" box regarding what type of legal entity the applicant was, and then signed the document as "owner." Debtor contends that this discrepancy should have resulted in Rosen's investigating the Missouri Secretary of State to determine what type of entity the applicant was and running a UCC check, where, Debtor asserts, it likely would have discovered Community First Bank's blanket lien. While it may be true that a phone call to Debtor regarding Great Western Ag's correct legal status could have led Rosen's down a different path, the law is that a lender does not have a duty to engage in an independent investigation of matters contained in a financial statement, therefore, the Court does not find Rosen's reliance unreasonable solely on its failure to clear up

this discrepancy. *See Kroh*, 87 B.R. at 1008. More to the point, however, as previously noted, the primary problem with the financial statements is that Debtor significantly overstated his assets and understated his liabilities. Even if Rosen's had engaged in some independent investigation of the type of entity Debtor actually was, determination of this question would not necessarily have enlightened Rosen's with Debtor's true financial status. Whether Rosen's had engaged in further inquiry with regard to Debtor's corporate status is not dispositive regarding the reasonableness of Rosen's reliance under the facts of this case.

Although it was not legally required to do so, Rosen's did engage in some independent investigation in attempt to learn more about Debtor's financial status by placing a call to Community First Bank, the entity listed as a "banking reference" on the credit application, but not listed on any of the financial statements as a liability. Mr. Schaeffer testified that his call to Community First Bank resulted only in confirmation that Debtor was an active borrower of the bank, but that he learned no additional information about how much the bank had loaned Debtor or anything about the terms or conditions of the loan. The "red flags" raised by Debtor are simply insufficient under the facts of this case to find that reliance by Rosen's was unreasonable. Mr. Schaeffer has been in the credit business for thirty-five years and has extended millions of dollars in credit to customers just like Debtor. While the format of Debtor's financial statements and credit application may be considered sub-standard by some financial institutions, Mr. Schaeffer testified that they were actually better than some of the "financial statements" that he receives, which are hand-written on notebook paper. In light of the fact that the "red flags" raised by Debtor were minor and that Rosen's attempted to ascertain more information about Debtor's financial status by contacting his "banking reference," which turned out to be Debtor's

one major creditor, the Court finds that it was reasonable for Rosen's to rely on Debtor's financial statements.

### B.    11 U.S.C. § 727(a)(3): **Failure to Maintain Adequate Books and Records**

Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be a "harsh and drastic penalty." *In re Riley,* 305 B.R. 873, 878 (Bankr. W.D. Mo.2004)*, citing American Bank v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr. W.D. Mo.1985). For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in favor of the debtor. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir.2002); *Riley,* 305 B.R. at 878*; Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr. W.D. Mo.2003); *In re Stanke*, 234 B.R. 449, 456 (Bankr. W.D. Mo.1999). A trustee or creditor requesting that the court deny a debtor a discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *Riley,* 305 B.R. at 878; *Sendecky*, 283 B.R. at 763; *Gray*, 295 B.R. at 343; *Kirchner v. Kirchner, II (In re Kirchner, II)*, 206 B.R. 965, 973 (Bankr.W.D. Mo.1997).

A debtor may be denied a discharge, pursuant to § 727(a)(3), for failure to keep or preserve books and records from which his financial situation may be ascertained, unless the failure is justified under all the circumstances of the case. *Riley*, 305 B.R. at 882. Intent is not an element of this ground for denial of discharge; the standard imposed is one of reasonableness. *Riley*, 305 B.R. at 882, *citing Davis v. Wolfe (In re Wolfe)*, 232 B.R. 741, 745 (B.A.P. 8th Cir.1999). In determining the adequacy of the records maintained, the Court should consider the complexity of the debtor's business, the customary business practices for record keeping in that

12

type of business, the degree of accuracy of existing books, and the debtor's courtroom demeanor. *Riley*, 305 B.R. at 883, *citing Sendecky*, 283 B.R. at 764; *see also, Milam v. Wilson (In re Wilson),* 33 B.R. 689, 692 (Bankr. M.D. Ga.1983) (the inquiry should include education, experience, and sophistication of the debtor...the volume of the debtor's business; the amount of credit extended to the debtor and any other circumstances relevant to the decision of reasonableness). Discharge should not be denied if the debtor's records, though poorly organized, are reasonably sufficient to ascertain the debtor's financial condition. *Riley,* 305 B.R. at 883. The extent to which a debtor should be held accountable for not keeping accurate records is a matter of degree and varies with a debtor's sophistication. *See K & K Co., Inc. v. Conde (In re Conde)*, ___ B.R. ___, 2008 WL 1815633 (Bankr. W.D. Pa.).

Once the plaintiff establishes the records are inadequate, the burden of production shifts to the debtor to demonstrate that the failure to keep adequate records was justified under all the circumstances. *Id., citing Sendecky*, 283 B.R. at 764. Vague and indefinite explanations of losses that are not corroborated by documents will not suffice. *See Conde*, 2008 WL at *4, *citing Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir.1992).

The Court concludes that on this record, Rosen's has satisfied its burden of establishing that Debtor's records were inadequate. The evidence demonstrates that Debtor did not keep adequate documents, records and the like from which his financial condition prior to filing bankruptcy could be reconstructed, nor could intelligent inquiries regarding his financial transactions be made. Debtor has been involved in the business of farming his entire life. He has two years of college education and he ran atleast two businesses, one was a cattle operation and the other involved resale of agricultural products. He had enough business acumen to secure

more than a million dollar loan from Community First Bank and he testified that, at times, his businesses generated over $2 million in sales, both impressive numbers in the Court's view. The business records in evidence include: (1) copies of cancelled checks on Debtor's bank statements, only a handful of which contain information regarding what the check was for or even on behalf of which business the check was negotiated; (2) financial statements generated by Debtor which are admittedly false; (3) profit and loss statements; and (4) tax returns prepared by an accountant.[6] There is no allegation that Debtor destroyed, concealed or falsified any documents. The only question is whether the business records in evidence are sufficient for the Court to be able to reconstruct what happened in the time frame leading up to Debtor's bankruptcy filing.

Debtor asserts in his post-trial brief that he produced two large volumes of exhibits and that the bank records that he maintained were the records that his accountant used to prepare his federal income tax returns for the years 2004, 2005 and 2006. He argues that because he produced a significant number of documents, and because his accountant was able use these same documents to prepare his tax returns, then they must be considered sufficient under §727(a)(3). The Court disagrees. Documents produced by a debtor must be more than merely voluminous. *See In re Shah*, 388 B.R. 23, 35 (Bankr. E.D. N.Y.2008). "[The documents] must assist the Court and the creditors in determining what the Debtor's financial condition was as of the Petition Date, and for the recent period prior to the Petition Date." *Id.* A debtor may not simply produce reams of unorganized documents and request the judge or trustee to sift through

---

[6] Debtor's post-trial brief states that Debtor maintained check registers. See Debtor's Post-Trial Brief, P. 10. There are no check registers in evidence nor was there any testimony about the existence of any registers.

them.  *See Havel v. Vandewoestyne, (In re Vandewoestyne*), 174 B.R. 518, 523 (Bankr. C.D. Ill.1994).  "The records must 'be such as to allow the Trustee, the creditors, and the court to meaningfully reconstruct the debtor's financial status'."  *Id., see also Goff v. Russell Co.*, 495 F.2d 199, 201 (5th Cir.1974) (records are insufficient where substantial additional work is required for one to gain insight into debtor's financial condition).

     At the trial, counsel for Rosen's demonstrated, through a meticulous review of more than fifty of Debtor's cancelled bank checks, which involved hundreds of thousands of dollars, that Debtor could not account for what a vast majority of the checks were for, nor did he have any other records to document the purpose of the payments.  His explanation that the even-dollar amount checks were transferred to other accounts to cover certain costs and expenses and the specific-dollar amount checks were written to pay specific invoices was vague and unsupported by any documentation, and in the Court's view, insufficient to satisfy his burden of demonstrating that his failure to keep adequate records was justified under the circumstances. Considering the amount of credit he was extended and the volume of sales that he was generating, the Court finds his assertions of unsophistication as an explanation for his inadequate business records, similarly unpersuasive.   Despite the fact that he was involved with transacting millions of dollars, he had no general ledger, no accounts receivable or accounts payable journal and the financial statements in evidence are admittedly inaccurate and do nothing to provide a meaningful basis for reconstructing his financial situation.  The only "true" records in evidence are a handful of cancelled checks which actually indicate in the memo line what the check was for.  However, even Debtor could not discern what the writing stated on many of the memo lines. The Court finds that on these facts, copies of Debtor's cancelled checks and his tax returns are

not sufficient to enable a creditor or the Court to ascertain his financial condition. *See e.g. Matter of Juzwiak*, 89 F.3d 424 (7th Cir.1996) (Court denied discharge to small business, which did large volume of sales, finding that checking account ledgers, cancelled checks, deposit slips, bank statements and a tax return were insufficient for a creditor to reconstruct the debtor's financial dealings.); *Grisham Farm Products, Inc. v. Keller (In re Keller),* 322 B.R. 127 (Bankr. E.D. Ark.2005) (Debtor's failure to keep adequate records was not justified just because he was a farmer. Court denied discharge where farmer/debtor's business records were not sufficient for the trustee to determine whether his farm expenses and farm income were accurate.); *In re Buzzelli*, 246 B.R. 75, 102-105 (Bankr. W.D. Pa.2000) (debtor's failure to maintain more than bank statements and canceled checks to account for business income and expenses was insufficient to withstand an action under § 727(a)(3)); *Verti v. Meadowbrook Mall Co.*, 174 B.R. 143, 146 (Bankr. M.D. Fla.1994) (bank statements, cancelled checks and deposit slips not identifying source of funds inadequate)*; In re Morando*, 116 B.R. 14, 15 (Bankr. D. Mass.1990) (business account records such as check stubs, cancelled checks and bank statements held to be insufficient to document complex business transactions); *Schultz v. Shapiro (In re Shapiro)*, 59 B.R. 844, 850 (Bankr. E.D. N.Y.1986 (check stubs and notations on checks drawn by the debtor held to be insufficient business records).

      The Court is also unpersuaded by Debtor's argument that because his tax accountant was able to prepare his tax returns using the business records in evidence, that they should, therefore, be found sufficient under §727(a)(3). "[T]ax returns 'prepared by an accountant from whatever records the accountant can garner from the tax payer, are not a significant indicia of sufficient record keeping. The tax returns themselves clearly do not provide sufficient documentation,

since they fail to provide itemization of transactions'." *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 118 (Bankr. E.D. N.Y.1993), *citing In re Goldstein*, 123 B.R. 514, 522 (Bankr. E.D. Pa.1991); *see also*, *In re Tan*, 350 B.R. 488, 496 (Bankr. N.D. Ca.2006). The Court finds that Debtor's financial condition does not become any more clear when reviewing his tax returns. Debtor's gross revenue and business deductions in any given year does not help explain how, why or when his financial condition deteriorated. Overall, Debtor failed to convince the Court that the business records in evidence are sufficient for the Court to ascertain his financial condition. Given all these facts, the Court finds the Debtor failed to keep adequate books and records, or to provide an adequate explanation for their absence, and therefore should be denied a discharge pursuant to § 727(a)(3).

Because Debtor will be denied a discharge under § 727(a)(3), the Court will not make any findings regarding Rosen's § 727(a)(5) claim, as this claim is now moot.

### III. CONCLUSION

For the reasons stated above, the Court finds that Rosen's has proven the elements of § 523(a)(2)(B) by a preponderance of the evidence and, therefore, the debt owed to Rosen's by Debtor as set forth in Rosen's proof of claim is non-dischargeable. The Court also finds that Rosen's has proven the elements of § 727(a)(3) by a preponderance of the evidence, that Debtor failed to provide an adequate explanation for the absence of business records and, therefore, Debtor will be denied a discharge. The Court makes no findings regarding Rosen's allegations pursuant to § 727(a)(5).

A separate order will be entered as required by Rule 9021.

ENTERED this 29th day of August 2008.

/s/ Dennis R. Dow
United States Bankruptcy Judge

Copies to:

Louis J. Wade

Erlene W. Krigel

Stanford Krigel

Janice E. Stanton